IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARL Y. HOLMES, individually and as Personal
Representative of the Estate of Kevin W. Holmes, and
as Parent, Guardian, and Next Friend of KELSEY
ELIZABETH HOLMES and CONNER HOLMES,
Statutory Wrongful Death Beneficiaries of Kevin W.
Holmes, Deceased,

      Plaintiff,

vs.                                                  No. CV-02-1472   JB/ACT

BURNS & WILCOX, LTD., a foreign corporation, and
SEELEY & CO. INSURANCE and CARLSBAD
INSURANCE & REAL ESTATE, INC. and RUIDOSO
INSURANCE AGENCY, INC., a New Mexico corporation,
and SUSAN GOODRICH, individually, and MARK
DECKER, individually, and BRIAN MIRAU, individually,
and ANGELA VASQUEZ, individually,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on the Defendant Burns & Wilcox, Ltd's Motion for Summary Judgment, filed July 11, 2003 (Doc. 64). The Court held a hearing on this motion on December 22, 2003. The primary issues are: (i) whether Win, Place or Show ("WPS") had any relationship with Burns & Wilcox, Ltd ("Burns") or made any representations to Burns that would give rise to liability for a negligent failure to broker or procure insurance; (ii) whether Burns made willful misrepresentations to WPS in violation of the New Mexico Insurance Code and the Unfair Trade Practices Act; (iii) whether Burns failed to deliver insurance quotes and/or binders to WPS in violation of the Insurance Code; and (iv) whether Burns received unjust enrichment based on its

dealings with WPS and WPS' agents. Because the Court finds that Burns had a relationship more like an insurance company than a broker or agent to WPS, the Court will grant the motion and dismiss Burn from the case.

## BACKGROUND

On January 9, 2000, Plaintiff's Decedent, Kevin Holmes, died as a result of an incident with another patron, in the parking lot of WPS, a bar in Ruidoso, New Mexico. See Plaintiff's Amended Complaint ¶ 41, at 8, filed October 23, 2002 (First Judicial District of New Mexico), removed to the United States District Court for the District of New Mexico November 21, 2002 (Doc.1). Dean Fowler ("Fowler") and Thomas Eddie Fowler were at all relevant times co-owners and co-managers of WPS. See Deposition of Edward Dean Fowler at 7:17-25; id. at 32:16-19 (taken January 14, 2003). Plaintiff Charl Y. Holmes ("Holmes") is the assignee of Fowler Investments, Inc., doing business as WPS, Inc., Fowler Inc., and Edward Dean Fowler individually. See Amended Complaint ¶¶ 1-3, at 2.

Beginning about June 1988, Fowler became involved in dealing with WPS' insurance. See Fowler Depo. at 34:3-10. He did not know what kind of insurance WPS had. See id. at 33:11-14. Fowler became primarily responsible for WPS' insurance sometime in the fall of 1995 when Thomas Fowler had open heart surgery. See id. at 34:11-14; id. at 45:8-21; id. at 49:6-14.

Fowler initially dealt with Susan Goodrich at Seeley & Company, a local Ruidoso insurance company ("Seeley"). See id. at 46:20-23; id. at 47:21-23. Seeley continuously served as the WPS insurance agency from 1988 through November 29, 1999. See Affidavit of Edward Dean Fowler ¶ 6, at 2 (executed June 30, 2003). In the fall of 1996, Fowler told Goodrich that he wanted to increase the WPS building contents insurance, that Dram Shop coverage was important to WPS and

that he wanted the best available coverage that would cover all the risks. See id. at 61:14-20; id. at 62:23-63:10.

Before 1996, WPS never held a policy which included assault and battery coverage. See Deposition of Larry Shulse at 76:19-25. Goodrich contracted with Burns, a surplus lines broker, to place liquor liability coverage. See Burns Response to Request for Admission No. 19. Burns issued WPS a surplus lines binder showing AAI Syndicate #1 as the insurer, effective for the policy period 12/1/1996 to 12/1/1997, insuring WPS for liquor liability assault and battery coverage for $1,000,000 occurrence/aggregate limits. See Burns Response to Request for Admission No. 20.

Seeley, as well as Carlsbad Insurance Agency for later time periods, acted as surplus lines producing brokers and would solicit quotations at the expiration of each one year policy from a number of surplus lines brokers for the insurance needs of WPS. See Shulse Depo. at 73 and 76; Deposition of Mark Decker at 115:14-19 (taken May 16, 2003); Deposition of Angela Vasquez at 37:4-18 (taken May 16, 2003). The insurance agents, or surplus lines producing brokers, would then determine which quotes to accept. In each instance relevant to this matter, a quote was accepted for insurance placed through Burns.

Burns asserts that, after acceptance of each quote, it issued a binder to WPS' insurance agents specifically identifying whether assault and battery coverage was excluded and the dollar limit if coverage was provided. See Acceptance and binders for periods 12/1/1996 to 12/1/2000. Holmes contends that Burns, Seeley, Goodrich and Mark Decker (an employee of Seeley), did not provide WPS with any of the binders for policy periods 12/1/1996 to 12/1/2000. See Fowler Aff. ¶ 29, at 5. Holmes further asserts that WPS never received any liquor liability policy for the period 12/1/1997 to 12/1/1998 from any Defendant. See id. ¶ 31, at 6.

For the policy period 12/1/1997 to 12/1/1998, Seeley obtained a quote from Burns (on behalf of AAI) which provided for coverage with a sub limit of $50,000 for assault and battery coverage within a commercial package policy; the quote was accepted and a binder issued. See Acceptance and binders for periods 12/1/1996 to 12/1/2000. Holmes asserts that neither Seeley, Goodrich, Decker, nor Burns provided WPS with the stated policy or binder and that no one disclosed the $950,000 reduction in assault and battery coverage from the prior year's limits of $1,000,000. See Fowler Aff. ¶ 13, at 3. WPS did not request, consent to or authorize Goodrich, Decker, or Seeley to reduce its 12/1/1996-12/1/1997 liquor liability assault and battery coverage limits. See id. ¶ 11, at 2-3. Neither Seeley, Goodrich nor Decker ever advised WPS that they were unable to obtain $1,000,000 in liquor liability assault and battery coverage limits before or after the expiration of the 12/1/1996 to 12/1/1997 AAI #1 policy containing that coverage. See id. ¶ 17, at 3-4.

For the next policy year, the reliability of AAI had been downgraded and Burns notified Seeley of the downgrade and a reluctance to broker any future AAI policies. Acting through its agency manager, Decker, Seeley then requested that Burns move, place and bind the WPS liquor liability coverage as quoted, effective 12/1/1998 to 12/1/1999, by and through Underwriters at Llloyd's London ("Lloyd's") containing a total assault and battery exclusion. See Decker Depo. at 72:4-75:20; id. at 76:19-78:3; id. at 80:16-81:17. Burns did so and issued a binder. See Acceptance and binders for periods 12/1/1996 to 12/1/2000.

Holmes asserts that neither Burns nor Seeley provided WPS with the quote, or the binder, or advised WPS of the change in carriers or that the 12/1/1998 to 12/1/1999 Underwriters at Lloyd's London policy contained a liquor liability assault & battery coverage exclusion. See Fowler Aff. ¶¶ 12, 14, at 3. WPS did not request consent to or authorize Decker or Seeley to move its liquor

liability coverage to Lloyd's and did not -- and would not -- permit the placement of liquor liability insurance with an assault and battery exclusion. See id. ¶ 15, at 3. Neither Seely, Goodrich, nor Decker ever explained any available market options to WPS at the time they moved and placed its liquor liability coverages with Lloyd's or at any other time. See id. ¶ 18, at 4.

For the policy period from 12/1/1999 to 12/1/2000, Carlsbad Insurance Agency ("CIA") obtained a quote from Burns which excluded assault and battery coverage under both a commercial and separate liquor liability policy; the quote was accepted and a binder issued. See Acceptance and binders for periods 12/1/1996 to 12/1/2000. Neither Burns nor CIA provided WPS with the quote, or the binder or advised that the 12/1/1999 to 12/1/2000 contained an assault and battery exclusion. See Fowler Aff. ¶ 26, at 5.

In November 1999, Fowler had Brian Mirau assist in procuring insurance. See Deposition of Brian Mirau at 16:14-25; id. at 22:19-21; id. at 23:4-7. Fowler authorized Mirau to contact Seeley to obtain information on WPS' coverage. See Fowler Aff. ¶ 22, at 4. On November 29, 1999, Mirau presented Fowler with a letter drafted on Ruidoso Insurance Agency ("RIA") letterhead and addressed to Burns which requested his signature to appoint CIA as its exclusive agent and broker. See Amended Complaint ¶ 37, at 7; Fowler Aff. ¶ 24, at 4-5. The letter authorized Burns to furnish CIA's representative, Angela Vasquez, with all information she may request regarding WPS insurance contracts, schedules, worksheets, bonds or other data. See Amended Complaint ¶¶ 37, 38, at 7. Fowler Aff. ¶¶ 24, 25, at 4-5.

Fowler asked CIA to look for coverage for the upcoming 1999-2000 policy period that was like the insurance WPS then had in effect. See Vasquez Depo. at 46:16; id. at 47:1; Mirau Depo. at 117:22 to 118:19. Brian Mirau, Karen Mirau, RIA and CIA did not review any coverage forms,

limitations, exclusions, or conditions contained in the Lloyd's 12/1/1999 to 12/1/2000 surplus lines policies with WPS. See Fowler Aff. ¶¶ 16, 19, at 3-4. Had the liquor liability application for the 1999-2000 coverage period been reviewed with WPS, the issue of assault and battery coverage would have arisen because it is a separate line item in the form. See Vasquez Depo. at 54:1-22.

Burns enclosed a letter in the WPS 12/1/1999 to 12/1/2000 policy noting that an endorsement had been added that excludes coverage for Y2K computer problems. See Y2K Notice. Burns did not send Fowler notices of any other changes in coverage. Fowler did not ask for an evaluation of his coverages or for recommendations for any changes and did not discuss specific kinds of coverages or coverage limits. See Fowler Depo. at 89:3-11. Holmes claims that Fowler always expected to have $1,000,000 of liquor liability assault and battery risk coverage, because he had it in the policy period 12/1/1996 to 12/1/1997 and no one advised him later that he no longer had it.

The Burns office with whom Seeley and CIA dealt was located in Phoenix, Arizona. See Deposition of Michael Maharaj at 15:25 to 16:9. Fowler never had any conversations with any employee of Burns. See Fowler Depo. at 108:6-9; Maharaj Depo. at 24:22-25:3. Fowler was not aware that Burns existed, or had any involvement with any insurance of WPS until after he was sued in the Holmes law suit, in the year 2000. See Fowler Depo. at 105:2-9. Burns dealt only with the insurance agent (referred to by Holmes as the surplus lines producing broker) for WPS, per its business practice. See Maharaj Depo. at 21:11-18; id. at 16:10-23.

In the process of obtaining coverage for the 12/1/1999 to 12/1/2000 policy period, CIA obtained a quote from Scottsdale Insurance Company which included $500,000 in assault and battery coverage. See Deposition of Joan Oliver at 139:17-140:21; Deposition of Karen Mirau at 40:4-21. The Scottsdale Insurance Company quote was allegedly incorrect because the form did not have an

"X" indicating whether the quote included assault and battery coverage. As such, the quote may not have been honored. See Vasquez Depo. at 63:19-65:7; id. at 66:1-68:13.

Fowler never read any insurance policy issued to WPS or any cover page thereto, see Fowler Depo. at 41:23-42:18, until after Holmes filed the wrongful death suit. Fowler never even looked at WPS' insurance policies but simply put them in a file. See id. at 41:23-25; 44:21-24

Burns asserts that, when Fowler first read his policies in 2000 in the office of his attorney Rich Olsen, he read both the 1997-1998 policy where his assault and battery coverage was reduced from $1,000,000 to $50,000 and the subsequent policies excluding assault and battery coverage. When reading the policies he could easily determine that his assault and battery coverage had been reduced for the policy year 1997-1998 and no coverage existed in the two subsequent policies because of assault and battery exclusions. See id. at 178 and 180. Holmes argues that Fowler did not receive or review any WPS policies from any of the Defendants for the period 1997-1998 and asserts that such policy does not exist.

Goodrich, Decker, Vasquez, Seeley, RIA, CIA, Biran Mirau and Karen Mirau did not inform WPS that they placed its insurance with surplus lines carriers. See Fowler Aff. ¶ 9, at 2. WPS relied on the expertise, skill and specialized knowledge of its agents and brokers to obtain adequate liquor liability risk coverages. See id. ¶ 20, at 4. None of the Defendants gave WPS any written coverage quotations or coverage reviews before they placed any of its surplus lines insurance coverages between 1996 and 2000. See id. ¶ 28, at 5. Seeley, Goodrich, Decker, Mirau, Vasquez, CIA and RIA did not review any coverage checklists or insurance proposals with WPS or give it copies of same before placing surplus lines coverage. See id. ¶ 28, at 5. Burns, Seeley, Goodrich and Decker did not provide WPS with any binders issued by Burns on any of the liquor liability insurance they

placed for WPS between 1996 and 2000. See id. ¶ 29, at 5.

CIA obtained a general commercial liability insurance policy for WPS for 12/1/1999 to 12/1/2000 with Unionamerica, who intervened in the Holmes v. Eidson wrongful death lawsuit. Unionamerica obtained summary judgment in its favor and against WPS on its liability to pay any judgment against WPS for the wrongful death of Kevin Holmes. See Holmes v. Eidson, CIV 00-1707, Memorandum Opinion & Order at 4, (D.N.M., filed November 2, 2001)[Doc. No. 71]. The Court determined that "WPS had no reasonable expectation of coverage" for assault and battery under the "dynamics of the insurance transaction" because Fowler "never requested coverage for assault and battery, but only requested the best coverage possible." See Memorandum Opinion and Order at 15.

## PROCEDURAL HISTORY

In her Amended Complaint, Holmes asserts five claims against Burns in Counts XI - XV: (i) Breach of Contract, Negligent Failure to Broker and Procure Insurance Coverage, and Alternatively, For Third-Party Beneficiary and Breach of Fiduciary Duty; (ii) Violations of the Insurance Code; (iii) Violations of the Unfair Trade Practices Act; (iv) Fraudulent Misrepresentation and Concealment; and (v) Unjust Enrichment. Burns moved for summary judgment on all of these claims, and Holmes voluntarily withdrew her claims for Breach of Contract and Fraudulent Misrepresentation and Concealment. This opinion addresses the remaining claims.

## STANDARDS APPLICABLE TO MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56(c). Although a drastic remedy, summary judgment is integral to the rules of civil procedure, designed to achieve just, speedy, and inexpensive determination of cases. See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1985). Courts should not be reluctant to employ it in the proper case. See id.

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. at 322. In such a situation, there can be "no genuine issue as to any material fact," as a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. See id. at 324.

Rule 56 requires the movant to make a prima facie showing that no genuine issue of material fact exists by presenting evidence sufficient in law to raise a presumption of fact. See id. at 323. Rule 56 does not require the movant to demonstrate beyond all possibility that no genuine issue of fact exists. See id.

## LEGAL ANALYSIS

**I. NEW MEXICO LAW BINDS AN INSURED TO POLICY TERMS THAT THE INSURED COULD EASILY LEARN BY READING THE POLICY.**

The undisputed evidence demonstrates that Holmes' assignor, WPS, did not read the insurance policy at issue, or any other of the insurance policies covering WPS. Under New Mexico law, an insurance policy's plain, clear, and unambiguous terms -- which the insured failed to review -- bind the insured. See Berlangieri v. Running Elk Corp., 2002-NMCA-046, ¶ 25, 132 N.M. 92, 98, 44 P.3d 538, 544 (citing Porter v. Butte Farmers Mut. Ins. Co., 68 N.M. 175, 179, 360 P.2d 372, 375

(1961)); State Farm Fire & Casualty Co. v. Price, 101 N.M. 438, 446, 684 P.2d 524, 532 (Ct. App. 1984)("[R]eceipt and retention of an insurance policy without objection by one who has had an opportunity to examine it for a reasonable time is regarded as an acceptance. The insured is required to familiarize himself with its terms.")(internal citation omitted). Under the facts of this case, Burns is more like an insurer than a broker or agent that may know or have said something that eliminates the duty to read.

## II. THE COURT WILL DISMISS HOLMES' CLAIMS UNDER COUNT XI FOR NEGLIGENT FAILURE TO BROKER AND PROCURE INSURANCE COVERAGE, AND ALTERNATIVELY, FOR THIRD-PARTY BENEFICIARY AND BREACH OF FIDUCIARY DUTY.

Holmes' claims in Count XI fail because she does not establish that WPS asked Burns to act as its agent or to procure insurance coverage for WPS. Holmes cannot, therefore, establish a reasonable expectation of coverage that would create liability for Burns under these claims.

### A. BURNS WAS NOT WPS' AGENT

An agent is one whom, by agreement, another authorizes to act on its behalf and under its control. See Santa Fe Tech., Inc. v. Argus Networks, Inc., 2002-NMCA-030, ¶ 26, 131 N.M. 772, 782, 42 P.3d 1221, 1231 (citing Restatement (Second) Agency § 1, at 7 (1958)), cert. denied, 131 N.M. 737, 42 P.2d 842. See also Madsen v. Scott, 1998-NMSC-042, 128 N.M. 255, 992 P.2d 268. There is no dispute that Burns was not WPS' agent for any purpose, including obtaining insurance coverage. See Transcript of Hearing at 104:14-18 (December 22, 2003)("Transcript").[1] Burns was a surplus lines broker who obtained and provided insurance quotes and bound coverage as requested by an insurance agency, such as Seeley or CIA.

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

-10-

Dean Fowler had not heard of Burns until after Holmes' death. See Fowler Depo. at 105:2-9. Fowler had not had any conversations with Burns or with any Burns employee before that date. See id. at 108:6-9. Likewise, Brian Mirau, who WPS engaged to assist with obtaining insurance in November 1999, had not heard of Burns or had any conversations with Burns. See Transcript at 104:19-21.

There was no agreement between Burns and WPS that Burns act as WPS' agent. See id. at 104:14-15. WPS did not authorize Burns to act on its behalf. It is difficult to imagine how there could have been an agency agreement or authorization where the one who would be the principal, WPS, did not know of the existence of the one who would be the agent, Burns.

Thus, the Court cannot hold Burns liable for failing to broker or procure insurance coverage or for breaching any fiduciary duty. No relationship existed giving rise to any duty that Burns owed to WPS.

### B. WPS DID NOT ASK BURNS TO OBTAIN LIQUOR LIABILITY COVERAGE WITHOUT AN ASSAULT AND BATTERY EXCLUSION.

As noted above, Fowler was not aware of Burns until after Kevin Holmes' death. Fowler did not have contact with Burns before the lawsuit. Fowler did not, therefore, contact Burns to request liquor liability coverage without an assault and battery exclusion. Holmes cannot, therefore, assert that Burns failed to broker or procure coverage that WPS did not ask it to broker or procure, even assuming Fowler asked his agent to procure such coverage. See Kenilworth Ins. Co. v. Chamberlain, 269 N.E.2d 317, 318 (Ill. App. 1971)(holding that an insured's desire for coverage expressed to his agent is not binding upon an insurer to whom the request for coverage was not made).

### C. WPS HAD NO REASONABLE EXPECTATION OF COVERAGE GIVING RISE TO LIABILITY ON THE PART OF BURNS FOR FAILURE TO PROCURE SUCH COVERAGE.

WPS had no assault and battery coverage because of the policy's clear exclusion. The only way in which coverage could exist would be pursuant to the doctrine of "reasonable expectations." "The doctrine of reasonable expectations may be invoked when the language of an insurance policy or representations of the insurance company lead an insured to reasonably expect coverage." Berlangieri v. Running Elk Corp., 2002-NMCA-046, ¶ 13, 132 N.M. 92, 98, 44 P.3d 538, 544. As Judge Smith explained in his Memorandum Opinion and Order in Holmes v. Eidson,

> The New Mexico Supreme Court considers the reasonable expectations of the insured when deciding whether an exclusionary clause is effective to nullify coverage under an insurance policy. *Barth v. Coleman*, 118 N.M. 1, 5, 879 P.2d 319, 323 (1994). The doctrine of reasonable expectations applies even where the policy language is unambiguous and coverage is excluded under the literal terms of the policy. *Id.* "Often, the dynamics of the insurance transaction, and not the language of the contract itself, determine what the reasonable expectations of the insured are." *Barth*, 118 N.M. at 5 (*citing Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A. 2d 1346, 1354 (1978)). In order to apply this doctrine, the court must "examine the dynamics of the insurance transaction to ascertain what are the reasonable expectations of the consumer." *Barth*, at 5 (*citing Collister*, 388 A.2d at 1354).

Memorandum Opinion and Order at 14. The record establishes that Burns made no representations to WPS that would give rise to a reasonable expectation of coverage claim against Burns. With no reasonable expectation of assault and battery coverage from Burns for the period in which Holmes was injured, Holmes' claims must fail

A coverage expectation from that defendant must exist before any duty to obtain coverage by that defendant can exist. No coverage expectation existed here. Hence, no duty existed. Accordingly, there is no basis for any breach of fiduciary duty to obtain insurance, and no negligence in failing to obtain insurance. The Court will therefore enter summary judgment for Burns on Count

XI of the amended complaint.

### III. HOLMES' CLAIMS UNDER COUNTS XII AND XIII FOR VIOLATIONS OF THE INSURANCE CODE AND VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT MUST ALSO FAIL.

Holmes' claims that Burns violated the New Mexico Insurance Code appear to be based on two assertions: (i) that Burns misrepresented or falsely advertised insurance policies, see NMSA 1978, §§ 59A-16-4 and 59-16-20, and (ii) that Burns failed to deliver the quotes and/or binders it produced, see NMSA 1978, § 59A-14-14(A)-(E). Holmes' claims under the Unfair Trade Practices Act are that Burns (i) took advantage of WPS' lack of knowledge, ability, experience or capacity to a grossly unfair degree; and (ii) that Burns stated and/or concealed from WPS "that the insurance binders and/or policies brokered and placed as a surplus lines broker acting for the benefit of [WPS] involved rights, remedies or obligations that they did not involve." Amended Complaint ¶ 105, at 20; see also NMSA 1978, § 57-12-2.

#### A. HOLMES HAS NOT DEMONSTRATED A GENUINE ISSUE OF MATERIAL FACT WHETHER BURNS ENGAGED IN WILLFUL MISREPRESENTATION OR CONCEALMENT.

Holmes does not have a viable claim against Burns under NMSA 1978, § 59A-16-20 ("Any and all of the following practices with respect to claims, by an insurer or other person, knowingly committed or performed with such frequency as to indicate a general practice . . . ."). Section 59A-16-20 prohibits unfair insurance claims practices. That section does not appear to apply to the situation here. See Valley Improvement Ass'n, Inc. v. U.S. Fidelity & Guar. Corp., 129 F.3d 1108, 1123 (10th Cir. 1997)(determining that §59A-16-20 applies only to first-party claims). The issue here is not how Burns handled "claims," be they first-party claims or otherwise. Holmes may not bring such a claim against Burns.

Even if Holmes could bring this claim, Holmes has not shown that there is a genuine issue of material fact that should proceed to the jury. Holmes' claims that Burns engaged in unfair trade practices and misrepresented coverage in violation of the New Mexico Insurance Code are dependent -- similar to her negligence claims -- on WPS' expectation or stated desire for assault and battery insurance coverage. If there was no reasonable expectation of coverage from Burns, all claims that Burns in any way misrepresented the existence of such insurance *vis a vis* WPS also fail. There is also no evidence of intent. There is no evidence in the record supporting an assertion that Burns willfully concealed or misrepresented facts to WPS; Holmes does not establish a genuine issue of material fact whether such concealment or misrepresentation with some malice or intent occurred. Accordingly, the Court will enter summary judgment in Burns' favor on the claims that Burns violated NMSA 1978 59A-16-4 and 59A-16-20 in Count XII, and on the unfair trade practices claims in Count XIII.

### B.   HOLMES' CLAIMS THAT BURNS FAILED TO DELIVER QUOTES AND/OR BINDERS IN VIOLATION OF NMSA 1978, § 59A-14-14(A)-(E) ALSO FAIL.

Burns asserts that it delivered the quotes and binders it produced to WPS' agents and that such delivery meets the requirements of § 59A-14-14. Holmes asserts that Burns did not deliver the quotes and/or binders to WPS, in violation of § 59A-14-14. There is, therefore, a question of fact whether Burns delivered the quotes and/or binders and to whom. There is also a question whether delivery to the agent of an insured satisfies the requirements of § 59A-14-14. The Court need not determine either of these questions, and neither question precludes summary judgment on this claim.

Assuming without deciding that Burns' actions amounted to a violation of § 59A-14-14, Holmes has not presented evidence showing that any damages flowed from that violation. It is undisputed that Fowler never read or reviewed his insurance documents, and that he placed all such

documents in a file without reviewing them. While Holmes asserts that, had Burns -- rather than someone he knew -- delivered the quotes and/or binders, Fowler would have read them, because he did not have the personal relationship with Burns that he did with his agents. That assertion, however, has no support in the record. The record establishes that Fowler never reviewed such documents, and there is no reason to believe this circumstance would have been different. Thus, Holmes cannot establish that the failure to deliver binders and/or quotes resulted in any appreciable damages to WPS.

## IV.　HOLMES' CLAIMS FOR UNJUST ENRICHMENT UNDER COUNT XV MUST ALSO FAIL.

Finally, Burns was not unjustly enriched through accepting payments or commissions on insurance placed for WPS on the basis that it did not include assault and battery coverage. WPS did not reasonably expect to have such coverage from Burns. The Court will also enter summary judgment on Count XV.

## CONCLUSION

There is no genuine issue of material fact establishing that Burns negligently failed to broker or to procure insurance for WPS, that Burns made willful misrepresentations to WPS, or that Burns was unjustly enriched by its dealings with WPS and its agents. The Court will, therefore, grant this motion.

**IT IS ORDERED** that Defendant Burns & Wilcox, Ltd's Motion for Summary Judgment is granted and Defendant Burns & Wilcox, Ltd is dismissed from this case.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Steven R. Almanzar
Joleen K. Youngers
  Almanzar & Youngers, P.A.
Las Cruces, New Mexico

Roy Brandys
  Childress & Zdeb, Ltd.
Chicago, Illinois

    *Attorneys for the Plaintiff*

Carl J. Butkus
Lara L. White
  Butkus, Gay & Jahner, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants Carlsbad Insurance & Real Estate, Inc. and Angela Vasquez*

Steven L. Bell
  Atwood, Malone, Turner & Sabin, P.A.
Roswell, New Mexico

    *Attorney for Defendants Seeley & Co. Insurance, Susan Goodrich, and Mark Decker*

Gregory L. Biehler
  Beall & Biehler
Albuquerque, New Mexico

    *Attorney for Defendant Burns & Wilcox, Ltd.*

Timothy L. White
  Madison, Harbour, Mroz & Brennan, P.A.
Albuquerque, New Mexico

    *Attorney for Defendant Brian Mirau*